IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REBECCA CIMILDORO, et al. : | |
|     Plaintiffs, : | CIVIL ACTION |
| : | |
| v. : | |
| : | |
| METROPOLITAN PROPERTY AND : | |
| CASUALTY INSURANCE CO., et al. : | No. 09-1907 |
|     Defendants. : | |

# MEMORANDUM

**Schiller, J.**                                                                                                                                                                               **March 8, 2010**

      Rebecca Cimildoro filed a Complaint in the Philadelphia Court of Common Pleas against Metropolitan Property and Casualty Insurance Company ("Metropolitan") and Mark 1 Restoration Service, Inc. ("Mark 1") She claimed that Metropolitan failed to pay for a property loss she suffered when water damaged her home and that Mark 1 negligently performed work on her home allowing mold to infest her property, which caused significant damage. She waived her right to a jury trial. Defendants removed the case to this Court. This Court rejected Cimildoro's attempt to revive her right to a jury trial. Undaunted, Cimildoro filed an Amended Complaint, which added her fiancé, Peter Yerger, as a plaintiff, and inserted additional claims. Plaintiffs then demanded a jury. Presently before the Court are Defendants' motions to dismiss a number of Plaintiffs' claims and to strike Plaintiffs' jury demand. The Court grants the motions to dismiss in part and to strike the jury demand.

I. **BACKGROUND**[1]

Rebecca Cimildoro filed a Complaint in the Philadelphia County Court of Common Pleas against Metropolitan and Mark 1. She alleged that Metropolitan issued an insurance policy covering her property at 323 W. Laurel Avenue in Cheltenham, Pennsylvania. (Am. Compl. ¶ 6.) While the policy was in effect, Cimildoro suffered a covered loss when water escaped from a heating or plumbing system and damaged her property and personal belongings. (*Id.* ¶ 7.) Cimildoro notified Metropolitan in accordance with the policy, but Metropolitan refused to cover all of her loss. (*Id.* ¶¶ 9-10.) Metropolitan contracted with Mark 1 to perform emergency remediation work on Cimildoro's home. (*Id.* ¶ 23.) Mark 1, however, started working on the home later than they were supposed to and allegedly performed the work carelessly, which led to additional damage to Cimildoro's home and belongings. (*Id.* ¶¶ 25-28.) Plaintiff alleged that Defendants' carelessness and negligence caused her property to become contaminated by mold. (*Id.* ¶ 8.) The Complaint filed in state court contained a breach of contract claim against Metropolitan, a bad faith claim against Metropolitan, and a negligence claim against Metropolitan and Mark 1 based upon Metropolitan hiring Mark 1 to perform the remediation work on Cimildoro's home and Mark 1's purportedly shoddy work on her home. Cimildoro's state court Complaint did not contain a jury demand.

---

[1] Cimildoro and Yerger both included affidavits in support of their arguments as well as exhibits to support their arguments. The Court has ignored these extraneous documents. *See Gross v. Hill*, Civ. A. No. 92-1280, 1993 WL 266955, at *1 (E.D. Pa. July 8, 1993). In considering a motion to dismiss, courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). A motion for failure to state a claim tests the sufficiency of the plaintiff's pleading and this Court declines to turn the motions to dismiss before it into motions for summary judgment. *See* FED. R. CIV. P. 12(d).

On May 4, 2009, Defendants removed the case to this Court. On May 22, 2009, Metropolitan filed its Answer and Counterclaims. Mark 1 filed its Answer that same day. On June 30, 2009, Cimildoro filed her Answer to Metropolitan's Counterclaims. On November 16, 2009, Plaintiff filed a notice of jury demand and on November 25, 2009, she filed a Motion for Leave to File a Jury Demand pursuant to Rule 39(b) of the Federal Rules of Civil Procedure. After Mark 1 filed a response, the Court denied Plaintiff's request for a jury trial. On January 15, 2010, Cimildoro filed a motion for leave to amend her Complaint, which the Court granted. The Amended Complaint added a plaintiff and three counts to the Complaint. Specifically, Cimildoro named as a plaintiff Peter Yerger, who resided with Cimildoro at all relevant times. (Am. Compl. ¶ 30.) Yerger claims that the negligence of Metropolitan and Mark 1 forced him to live in deplorable, dangerous, and hazardous conditions and caused him anxiety and mental anguish. (*Id.* ¶ 31.) Cimildoro and Yerger also added claims for intentional and negligent infliction of emotional distress. One day after the Court granted leave to file the Amended Complaint, Cimildoro and Yerger demanded a jury trial.

## II. STANDARD OF REVIEW[2]

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party.

---

[2] Plaintiffs state that this Court may grant Defendants' motions only "if it is clear that no relief can be granted under any set of facts consistent with the allegations set forth [in the complaint]." (Mem. of Law in Supp. of Pls.' Answer in Opp'n to Metropolitan's Mot. to Dismiss at 5.) This is the wrong standard. The Court directs Plaintiffs' counsel to the binding Supreme Court precedent found in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) for the appropriate standard. As our own Third Circuit Court of Appeals instructed, "*Iqbal* additionally provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*." *Fowler v. UPMC Shadyside, Inc.*, 578 F.3d 203, 210 (3d Cir. 2009).

*See Bd. of Trs. of Bricklayers and Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272 (3d Cir. 2001). A court should accept the complaint's allegations as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A court need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Iqbal*, 129 S. Ct. at 1949.

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 547. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Simply reciting the elements will not suffice. *Id.* (concluding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has recently directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d at 210-11. Second, the court must then make

4

a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id*. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged – but has failed to show – that the pleader is entitled to relief. *Id*. at 211.

### III. DISCUSSION

#### A. Motion to Dismiss

##### 1. *Gist of the action*

Metropolitan argues that the negligence and emotional distress claims against it should be dismissed based on the gist of the action doctrine. The gist of the action doctrine bars plaintiffs from bringing a tort claim that merely replicates a claim for a breach of an underlying contract. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 (3d Cir. 2002) (citing *Phico Ins. Co. v. Presbyterian Med. Servs. Corp.*, 663 A.2d 753, 757 (Pa. Super. Ct. 1995)). According to the Pennsylvania Superior Court, the difference between contract and tort actions is that "[t]ort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002) (quoting *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. Ct. 1992)). Thus, a breach of contract will also give rise to an actionable tort only if the parties' obligations are defined by the larger social policies underlying tort law. *See Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3d Cir. 2001). A breach of contract can also give rise to an actionable tort if the contract was merely collateral to the wrong purportedly committed by the defendant. *eToll*, 811 A.2d at 14 (citing *Bash*, 601 A.2d at 829).

5

The gist of the action doctrine bars tort claims: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; (4) where the tort claim essentially duplicates a breach of contract claim or success of which is wholly dependent on the terms of a contract." *Erb v. Borough of Catawissa*, Civ. A. No. 07-1961, 2009 U.S. Dist. LEXIS 90342, at *26 (M.D. Pa. Sept. 30, 2009) (quoting *Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. Ct. 2005)).

Count III alleges that Mark 1 was an agent of Metropolitan and that Mark 1 negligently performed the work it contracted with Cimildoro to do. As a result, the water in her home was not properly removed, which allowed mold to enter her home and "requir[ed] a comprehensive demolition, cleaning and replacement of the premises and the contents thereof." (Am. Compl. ¶ 28.) She suffered anxiety and was forced to live in squalor due to Defendants' negligence. (*Id.*)

Cimildoro's negligence claim against Metropolitan is barred by the gist of the action doctrine. Her relationship with Metropolitan is contractual in nature and any duty Metropolitan owed her arises from her homeowners insurance policy. According to the Amended Complaint, Metropolitan hired a company to perform work on Cimildoro's home. If that company negligently performed the work, her claim against Metropolitan arises out of Metropolitan's contractual duties to repair her home. *See Bash*, 601 A.2d at 829-30 (dismissing negligence action because the parties' obligation arose out of contract); *Kojeszewski v. Infinity Ins. Co.*, Civ. A. No. 06-1261, 2006 U.S. Dist. LEXIS 79306, at *8 (M.D. Pa. Oct. 31, 2006) (dismissing negligence claim against insurer because "insurers do not have a general affirmative social duty to provide insurance coverage to members of the public. Thus, any duty breached by Defendant must arise out of the insurance contract between it and Plaintiffs.").

Plaintiffs argue that the gist of the action doctrine does not bar Cimildoro's negligence claim against Metropolitan because the claims rest on Mark 1's failure to properly dry out and repair her home. (Mem. of Law in Supp. of Pls.' Answer to Metropolitan's Mot. to Dismiss at 6.) According to Cimildoro, Metropolitan had a tort-based duty to dispatch competent personnel to repair her abode, meaning Mark 1's negligence can be imputed to Metropolitan.

The only reason Metropolitan would have any obligation to repair (or contract with another party to repair) Cimildoro's home would be because she suffered a covered loss under her insurance contract. Even if Mark 1 was an agent of Metropolitan, Mark 1's negligence would be similar to a Metropolitan insurance adjuster negligently handling Plaintiff's claim. In both cases, any duty owed to Cimildoro arises not from any social policy but from the fact that she contracted with Metropolitan to handle claims that her home was damaged. Accordingly, the gist of the action doctrine bars Cimildoro's negligence claim against Metropolitan.

But Metropolitan can only get so much mileage out of the gist of the action doctrine. Based on the Amended Complaint, Yerger had no contractual relationship with Metropolitan and any claim he has against Metropolitan must therefore be grounded in tort law. The Court will deny the motion to dismiss Yerger's negligence claim against Metropolitan and allow discovery on it.[3]

    2.    *Negligent infliction of emotional distress*

Cimildoro's negligent infliction of emotional distress claim against Metropolitan is also barred by the gist of the action doctrine. *See Oehlmann v. Metro. Life. Ins. Co.*, 644 F. Supp. 2d 521, 535 (M.D. Pa. 2007) Additionally, Plaintiffs' negligent infliction of emotional distress fails to state

---

[3] Mark 1 did not move to dismiss Yerger's negligence claim against it and therefore this claim will also proceed to discovery.

a claim because she failed to allege physical injury arising out of any alleged negligence. *See id*. (dismissing negligent infliction of emotional distress claim based on gist of the action but also noting that a plaintiff must allege a physical injury to state a claim); *Michtavi v. United States*, Civ. A. No. 07-628, 2009 U.S. Dist. LEXIS 18926, at *24 (M.D. Pa. Mar. 4, 2009) (dismissing negligent infliction of emotional distress claim because plaintiff failed to allege immediate and substantial physical harm as required by Pennsylvania law).

Plaintiffs argue, relying on *Toney v. Chester County Hospital*, 961 A.2d 192 (Pa. Super. Ct. 2008), that "the Pennsylvania Superior Court has recently held that physical impact is not required to state a cause of action for negligent infliction of emotional distress." (Mem. of Law in Supp. of Pls.' Answer in Opp'n to Metropolitan's Mot. to Dismiss at 8.) Maybe so, but neither Defendant contends that physical impact is a requirement to recover on a negligent infliction of emotional distress claim. What Defendants correctly contend is that Cimildoro and Yerger must show physical *injury* resulting from Defendants' negligence. (Mem. of Law in Supp. of Metropolitan's Mot. to Dismiss at 12; Mem. of Law in Supp. of Mark 1's Mot. to Dismiss at 8.) The Superior Court in *Toney* did not abrogate the requirement that a plaintiff seeking to recover for negligent infliction of emotional distress must show physical injury. Rather, the court affirmed that "[t]o state a cause of action for negligent infliction of emotional distress the plaintiff must demonstrate that she is a foreseeable plaintiff and that she suffered a physical injury as a result of the defendant's negligence." *Toney*, 961 A.2d at 199 (quoting *Armstrong v. Paoli Memorial Hosp.*, 633 A.2d 605, 609 (Pa. Super. Ct. 1993). The plaintiff in *Toney*, who allegedly suffered from, among other ailments, nausea, headaches, nightmares and anxiety, made the required showing of immediate and substantial physical harm. *Id*. at 200. Neither Cimildoro nor Yerger alleged the requisite physical manifestation

of their alleged emotional suffering. Instead, the Amended Complaint speaks only of anxiety, mental distress and anguish. (Am. Compl. ¶¶ 28, 34.) According to the *Toney* court, "[i]f the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance." *Toney*, 961 A.2d at 199 (quoting RESTATEMENT (SECOND) OF TORTS § 436A). Plaintiffs' negligent infliction of emotional distress claims fail not because they lack an allegation of physical impact; rather they fail because Plaintiffs failed to allege physical injury.

### 3. *Intentional infliction of emotion distress*

Plaintiffs' claim against Metropolitan for intentional infliction of emotional distress fails to state a claim.[4] For a plaintiff to state a claim for intentional infliction of emotional distress, she must establish: (1) the conduct of the defendant was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was severe. *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979). The conduct must be so outrageous as to be beyond the bounds of decency and intolerable in a civilized society. *See Williams v. U.S. Airways, Inc.*, Civ. A. No. 06-4797, 2007 U.S. Dist. LEXIS 65799, at *7 (E.D. Pa.

---

[4] Although the Court addresses the merits of the intentional infliction of emotion distress claims, the Court also finds that Cimildoro and Yerger have waived their intentional infliction of emotional distress claims by failing to address Defendants' arguments. Although Plaintiffs' response contains a heading that purports to address the intentional infliction of emotional distress claims, their opposition discusses only the negligent infliction of emotional distress claim. If counsel wants to address Defendants' claims, it cannot do so by simply including a heading saying that the Amended Complaint states a claim. *See Jackson v. J. Lewis Crozer Library*, Civ. A. No. 07-481, 2007 U.S. Dist. LEXIS 61582, at *18 (E.D. Pa. Aug. 22, 2007) (granting as uncontested portion of motion to dismiss for failure to respond to particular arguments raised in motion).

Sept. 5, 2007). Even accepting the factual allegations in the Amended Complaint as true, breaching a contract and negligently performing repairs on a home do not rise to the level of intolerable behavior needed to state a claim for intentional infliction of emotional distress. *See Littleton v. State Farm Fire & Cas. Co.*, Civ. A. No. 07-1515, 2007 U.S. Dist. LEXIS 80209, at **14-15 (M.D. Pa. Oct. 29, 2007) (citing extreme examples constituting outrageous behavior). And curiously, the *Toney* case – the only case upon which Plaintiffs rely to support their negligent and intentional infliction of emotional distress claims – actually held that the plaintiff failed to properly allege an intentional infliction of emotional distress claim because the conduct failed to rise to an atrocious and utterly intolerable level. *Toney*, 961 A.2d at 203. In *Toney*, a mother was told that her unborn child was normal and healthy based on a pelvic ultrasound. She was awake during delivery and watched in horror as she birthed a baby with severe physical deformities, including no arms below the elbow, no legs below the knee joints, and a short, incompletely developed tongue. *Id*. at 195. If the defendants' failures in *Toney* were insufficient to support an intentional infliction of emotional distress claim, Cimildoro and Yerger's allegations do not remotely approach the required outrageous conduct necessary to survive a motion to dismiss. Furthermore, the allegations from Cimildoro and Yerger sound in negligence and were neither intentional nor reckless.

For the same reasons that Cimildoro failed to state a claim against Metropolitan for negligent and intentional infliction of emotional distress, Yerger's negligent and intentional infliction of emotional distress claims against Metropolitan also fail to state a claim.[5] Finally, the Court also grants Mark 1's motion to dismiss the intentional and negligent infliction of emotional distress

---

[5] Regardless, Yerger did not respond to Defendants' arguments regarding his negligent infliction of emotional distress and the Court therefore finds that he also abandoned that claim.

claims against it as to both Cimildoro and Yerger for failure to state a claim.

B.     **Motion to Strike Jury Demand**

The jury demand filed the day after the Court granted leave for Plaintiffs to file an amended complaint raises two issues. First, does Plaintiffs' Amended Complaint revive the untimely jury demand? Second, should the Court permit Plaintiffs to demand a jury under Rule 39(b)?

1.     *Rule 38*

When a case is removed to federal court before all of the necessary pleadings are served, such as in this case, Rule 38 governs the timing of the demand. *See Henderson v. Harrah's Marina Hotel Casino*, 110 F.R.D. 66, 67 (E.D. Pa. 1986). Rule 38(b) states that a demand for a jury trial is made by: (1) "serving the other parties with a written demand – which may be included in a pleading – no later than 14 days after the last pleading directed to the issue is served; and (2) filing the demand in accordance with Rule 5(d)."[6] FED. R. CIV. P. 38(b). A party who fails to comply with this rule waives the right to a jury trial. FED. R. CIV. P. 38(d).

Cimildoro failed to make a jury demand with respect to her claims while in state court and upon removal, she failed to serve and file a jury demand on her claims within the mandated time period.[7] In fact, she answered Metropolitan's Counterclaim without demanding a jury and did not seek a jury until close to five months after she filed her Answer to Metropolitan's Counterclaim. The

---

[6] At the time Cimildoro initially sought a jury in November of 2009, Rule 38(b) afforded the parties ten days to serve and file the demand. The Rule became effective on December 1, 2009.

[7] Pennsylvania law requires a party to make a jury demand or the right to a jury trial is waived. PA. R. CIV. P. 1007.1(a). There is no right to a jury trial on a bad faith claim in Pennsylvania. *Mishoe v. Erie Ins. Co.*, 824 A.2d 1153, 1154 (Pa. 2003). In federal court, however, a party is entitled to a jury trial on a bad faith claim. *See W.V. Realty Inc. v. N. Ins. Co.*, 334 F.3d 306, 309 n.1 (3d Cir. 2003).

Court struck the demand because it was untimely and Cimildoro had waived her right to a jury trial. The Amended Complaint, however, adds Yerger as a plaintiff and add new claims. Plaintiffs demanded a jury with respect to the Amended Complaint one day after they filed their Amended Complaint. Thus, Cimildoro argues that the latest jury demand revives her untimely demand. As for Yerger, the Amended Complaint was his first opportunity to demand a jury.

For an amended pleading to revive a previously waived right to a jury, the amended pleading must raise new issues not contained in the original pleading. *Gonzalez v. Old Kent Mortgage Co.*, Civ. A. No. 99-5959, 2000 U.S. Dist. LEXIS 12314, at *5 (E.D. Pa. Aug. 15, 2000). A claim that merely raises the same issue or presents an alternative theory of recovery does not qualify as a new issue; rather, "the new issue must allege new factual issues." *Id.* at **5-6 (citations omitted). "An amended complaint that merely asserts new theories of recovery, but it based on the same facts as the original complaint, does not reestablish the [ ] right to demand a jury trial when the right had been waived as to the original complaint." 8 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 38.50 (2010).

Plaintiffs cite no cases to bolster their position. Plaintiffs fail to even cite Rule 38. Instead, they make conclusory statements that the claims filed are new. They do so without even acknowledging that some of Cimildoro's "new" claims are identical to claims brought in her original Complaint.

The breach of contract and bad faith claims against Metropolitan and the negligence claim against Metropolitan and Mark 1 asserted in the Amended Complaint are identical to the issues raised in Cimildoro's original state court Complaint and thus cannot revive her waiver of a jury trial as to those claims. *See Seal v. United Cerebral Palsy Ass'n*, Civ. A. No. 89-1101, 1990 U.S. Dist.

LEXIS 3587, at *4 (E.D. Pa. Mar. 30, 1990) (citing *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (1977)) ("[T]he right to trial by jury of all matters contained in those pleadings cannot be revived by amending the original pleadings").

The surviving negligence claims filed by Yerger present a more difficult question because Yerger was not mentioned in Cimildoro's state court Complaint. Nonetheless, the Court concludes that his claim does not present a new issue. For one thing, it arises out of conduct that took place prior to the filing of the original Complaint. The negligence claim merely asserts that because of Defendants' negligence, Yerger, who lived with Cimildoro at all relevant times, was forced to live in "deplorable, dangerous and hazardous conditions since April 27, 2009" and has suffered mental anguish. The claim rehashes old territory and contains no additional facts but only alleges that another resident of the insured property suffered as a result of Defendants' negligence.

Plaintiffs suggest that the Amended Complaint added damages claims suffered by Cimildoro and Yerger and that these claims occurred after the filing of the original Complaint. (Mem. of Law in Supp. of Pls.' Answer in Opp'n to Mark 1's Mot. to Dismiss at 4.) Specifically, they point to the fact that, after filing the original Complaint, they had to pay for temporary housing and Cimildoro received psychological treatment. These are not new claims but merely additional damages suffered as a result of Defendants' purported negligence. Yerger's negligence claim did not accrue when he paid for temporary housing; it accrued when Mark 1 negligently performed work where he lived, causing him injury. That Plaintiffs later made additional outlays of money does not change when their claims accrued. The Amended Complaint says that Plaintiffs lived together when the work was performed negligently and thus Yerger could have been named as a plaintiff in the original lawsuit. Furthermore, these purportedly new events occurred shortly after the filing of the original

13

Complaint, yet Plaintiffs offer no explanation for why they waited until January of 2010 to file an Amended Complaint. They also fail to explain why they waited to file their Amended Complaint until after they had participated in a Rule 16 conference with this Court, a settlement conference with a magistrate judge, and had filed an Answer to Metropolitan's Counterclaim. More troubling is the fact that Cimildoro's original Complaint alleges she "suffered a loss of use of [her home] for a time far in excess of that required to perform these services[;] . . . has incurred additional costs for substitute living arrangements; [and] has suffered anxiety, mental distress and anguish as a result of such negligence." (Notice of Remand Ex. A [Compl.] ¶ 24.) Thus, Plaintiffs' claims that the Amended Complaint raises new claims are belied by the allegations found in the original lawsuit.

As for Yerger, the fact that the Amended Complaint is his first appearance in this litigation does not entitle him to a jury trial. In *Pennsylvania ex rel. Feiling v. Sincavage*, 439 F.2d 1133 (3d Cir. 1971), the court affirmed the district court's decision to deny a jury trial to a new plaintiff. In *Sincavage*, the plaintiff sued three police officers for civil rights violations stemming from the search of his house. The plaintiff failed to make a timely jury trial demand and the district court denied his untimely demand. *Id*. at 1134. The plaintiff was granted leave to amend his complaint to add his wife as a plaintiff. Thereafter, his wife sought a jury trial but the court refused. The Third Circuit concluded that "[t]he district court did not err in permitting the wife to intervene in her husband's case in the status in which she found it." *Id*.

Yerger lived in the house with Cimildoro at all relevant times. Thus, any negligence on the part of Metropolitan or Mark 1 would have affected him at the same time as it affected Cimildoro. Yerger was not, however, a plaintiff when the case was filed in state court. Even after the case was removed, Yerger was not added as a party. It was not until January 19, 2010 that Yerger made his

initial appearance – even though he had been impacted by Defendants' conduct for over eight months by that time. Curiously, Yerger became a party to the case only after this Court denied Cimildoro's motion for leave to demand a jury. And the renewed jury demand came one day after the Amended Complaint was filed.

The Court does not lightly refuse a jury demand, particularly to a party that was not previously before the Court. But the circumstances here warrant the denial of the request. Yerger could have been brought into this case at a much earlier date and given the procedural background of this case, Yerger's presence is an obvious attempt to resuscitate his fiancée's right to a jury trial. Yerger must therefore enter this case as he finds it, as a bench trial. *See Sincavage*, 439 F.2d at 1134; *Ed Brawley, Inc. v. Gaffney*, 399 F. Supp. 115, 118 (N.D. Cal. 1975) ("While the amended complaint adds a new Plaintiff which did not have an opportunity to make a jury demand under the original complaint, the new Plaintiff's claim asserts rights under the original Plaintiff's copyright, and its claim is therefore also a reassertion of the claims in the original complaint. Accordingly, the motion to strike the jury demand will be granted.").

2. *Rule 39(b)*

A party that has waived its right to a jury trial may still move for one under Rule 39(b) of the Federal Rules of Civil Procedure. Courts in this district are directed to consider the following factors when deciding whether to grant an untimely jury demand: (1) whether the issues are suitable for a jury; (2) whether granting the motion would disrupt the schedule of the Court or the adverse party; (3) whether any prejudice would result to the adverse party; (4) how long the party delayed in bringing the motion; and (5) the reasons for the failure to file a timely demand. *SEC v. Infinity Group Co.*, 212 F.3d 180, 195-96 (3d Cir. 2000) (citation omitted). The decision whether to permit

a jury trial under Rule 39(b) is left to the court's discretion. *See Reis v. Barley, Snyder, Senft & Cohen, LLC*, Civ. A. No. 05-1651, 2008 U.S. Dist. LEXIS 26046, at *9 (E.D. Pa. Mar. 27, 2008).

With respect to the reason for the delay, a court will generally not grant a 39(b) motion if inadvertence or oversight is the only reason for the failure to make a timely demand. *Infinity Group*, 212 F.3d at 195 (citing *Plummer v. Gen. Elec. Co.*, 93 F.R.D. 311, 313 (E.D. Pa. 1981)); *see also The Personal Touch, Inc. v. Lenox, Inc.*, 122 F.R.D. 470, 472 (E.D. Pa. 1988) ("It has long been settled that mere inadvertence, oversight, or lack of diligence [on the part of counsel] will not justify the omission or abrogate the waiver [of a jury trial].") (citations omitted).

The Court also considers five months to be an excessive delay in seeking a jury trial here. Furthermore, Plaintiffs latest request for a jury trial came one day after this Court granted leave to file an Amended Complaint. "A party may not insert an untimely jury demand into a case by stealth; rather the proper procedure is a motion under Rule 39(b)." *Hare v. H & R Indus.*, Civ. A. No. 00-4533, 2001 U.S. Dist. LEXIS 8661, at *2 (E.D. Pa. June 26, 2001). The fact that Plaintiffs did not include a jury demand in their Amended Complaint but rather waited until after the Court granted leave to file an Amended Complaint is evidence that the Amended Complaint was merely an attempt to revive a previously waived request for a jury.

The length of the delay, the lack of a valid reason for the delay, and the manner in which Plaintiffs attempted to demand a jury trial weigh against this Court exercising its discretion to permit a jury trial here. Lastly, although the issues presented in this case certainly can be heard by a jury, they can just as easily and readily be tried by the Court. *See Katzenmoyer v. City of Reading*, Civ. A. No. 00-5574, 2001 WL 1175139, at *1 (E.D. Pa. Aug. 6, 2001) (refusing to grant Rule 39 relief because plaintiff failed to establish that issues in case were particularly suited to jury). Therefore,

the Court will strike the jury demand.

IV.     CONCLUSION

Now that the dust has settled, what remains?  Cimildoro has claims against Metropolitan for breach of contract, and bad faith.  She also has a claim against Mark 1 for negligence.  Yerger has claims against Metropolitan and Mark 1 for negligence.  This case will proceed as a bench trial on all counts and as to both Plaintiffs.  An appropriate Order will be entered on the docket consistent with the Memorandum.